23 Civ. 1300 (ER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALI ALEXANDER MOORE,

Plaintiff,

-against-

CITY OF NEW YORK, et al.,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City, Angelone,*
*Imperato, Neville, Rios, and Tavares*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Joseph Zangrilli*
*Tel: (212) 356-2657*
*Of Counsel: Jack McLaughlin*
*Tel: (212) 356-2670*
*Matter No.: 2024-075841*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ..................................................................................... 2

LEGAL STANDARD ............................................................................................. 3

ARGUMENT

POINT I

MANY OF THE CLAIMS IN PLAINTIFF'S
SECOND AMENDED COMPLAINT ARE TIME-
BARRED .................................................................................. 4

A. The § 1983 and § 1985 Claims Against
Individual Defendants Are Time-Barred
Because the Defendants Added to the Second
Amended Complaint Do Not Relate Back to the
Original Complaint ............................................................. 4

B. All State Law Claims Are Procedurally Barred ................................. 6

POINT II

PLAINTIFF FAILS TO STATE A CLAIM
UNDER FEDERAL CIVIL RIGHTS STATUTES................................... 8

A. The Second Amended Complaint Fails to State
a Claim for Municipal Liability Under Monell ................................. 8

B. The Second Amended Complaint Fails to State
a Valid Claim for Unlawful Detention. ............................................. 10

(1) Officers Had Probable Cause to Detain
Plaintiff for a Mental Health Evaluation
Based on Information Known at the
Time. ................................................................. 10

(2) Individual Officers Are Entitled to
Qualified Immunity. ................................................................. 12

C. The Second Amended Complaint Fails to State
a Valid Excessive Force Claim. ......................................................... 13

**Page**

         (1)    Plaintiff's Allegations of "Excessive Force" and "Unconventional Handcuffs" Are Conclusory and Legally Insufficient.................................................. 13

         (2)    Individual Officers Are Entitled to Qualified Immunity. .................................................. 14

    D.   Plaintiff's Claims Under the Civil Rights Act of 1866 (42 U.S.C. § 1981) Must Be Dismissed Because He Fails to Allege Any Impaired Contractual Relationship or Intentional Racial Discrimination. .................................................. 14

    E.   Plaintiff's Claims Under the Conspiracy Provisions of the Civil Rights Act of 1871 (42 U.S.C. § 1985) Must Be Dismissed Because He Fails to Allege a Conspiracy Based on Discriminatory Animus or Any Meeting of the Minds. .................................................. 16

    F.   Plaintiff's Claims Under the Civil Rights Act of 1964 Must Be Dismissed Because He Fails to Allege Any Intentional Discrimination by or Employment Relationship with City Defendants. .................................................. 17

    G.   The Second Amended Complaint Fails to State a Civil RICO Claim. .................................................. 18

POINT III

ADDITIONAL GROUNDS FOR DISMISSAL ...................................... 20

    A.   The Second Amended Complaint Fails to Comply with Rule 8's "Short and Plain Statement" Requirement .................................................. 20

CONCLUSION.................................................. 22

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Albert v. Carovano,*
   851 F.2d 561 (2d Cir. 1988)......................................................................................15

*Alexander v. Sandoval,*
   532 U.S. 275 (2001).............................................................................................18

*Anderson v. Creighton,*
   483 U.S. 635 (1986).............................................................................................12

*Anthony v. City of New York,*
   339 F.3d 129 (2d Cir. 2003)...................................................................................11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).........................................................................................3, 10

*Barkai v. Mendez,*
   No. 21 Civ. 4050, 2024 U.S. Dist. LEXIS 35845
   (S.D.N.Y. Feb. 21, 2024).......................................................................................11

*Barrow v. Wethersfield Police Dep't,*
   66 F.3d 466 (2d Cir. 1995).......................................................................................5

*Bd. of County Comm'rs v. Brown,*
   520 U.S. 397 (1997)................................................................................................8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................3, 14, 17, 18

*Bernard v. United States,*
   25 F.3d 98 (2d Cir. 1994)........................................................................................11

*Brandon v. City of New York,*
   705 F. Supp. 2d 261 (S.D.N.Y. 2010)........................................................................9

*Brash v. Richards,*
   37 N.Y.3d 1 (2021) ................................................................................................7

*Britt v. Garcia,*
   457 F.3d 264 (2d Cir. 2006)....................................................................................16

*Buckner v. New York Admin. for Childs. Servs.,*
   No. 24-CV-2539 (LTS), 2024 U.S. Dist. LEXIS 140152
   (S.D.N.Y. July 31, 2024) .........................................................................................9

**Cases**                                                                    **Pages**

*Buie v. City of New York*,
    2015 U.S. Dist. LEXIS 147642
    (E.D.N.Y. Oct. 30, 2015) ...................................................................13

*Cash v. County of Erie*,
    654 F.3d 324 (2d Cir. 2011) .................................................................9

*City of Canton v. Harris*,
    489 U.S. 385 (1989) .............................................................................9

*Colon v. City of New York*,
    60 N.Y.2d 78 (1983) ...........................................................................11

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
    589 U.S. 327 (2020) ...........................................................................14

*Connick v. Thompson*,
    563 U.S. 51 (2011) .............................................................................10

*Coon v. Town of Springfield*,
    404 F.3d 683 (2d Cir. 2005) .................................................................8

*Cornwell v. Robinson*,
    23 F.3d 694 (2d Cir. 1994) ...................................................................4

*D. Penguin Bros. v. City Nat'l Bank*,
    587 F. App'x 663 (2d Cir. 2014) ...................................................18, 19

*Davidson v. Bronx Mun. Hosp.*,
    64 N.Y.2d 59 (1984) .............................................................................6

*Dean v. Town of Hempstead*,
    No. 14-CV-4951 (MKB), 2024 U.S. Dist. LEXIS 146822
    (E.D.N.Y. Aug. 16, 2024) .....................................................................6

*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470 (2006) .....................................................................14, 15

*Duplan v. City of New York*,
    888 F.3d 612 (2d Cir. 2018) .................................................................4

*Frooks v. Town of Cortlandt*,
    997 F. Supp. 438 (S.D.N.Y. 1998) .....................................................20

*General Bldg. Contractors Ass'n v. Pennsylvania*,
    458 U.S. 375 (1982) ...........................................................................15

**<u>Cases</u>**                                                                          **<u>Pages</u>**

*Graham v. Connor*,
    490 U.S. 386 (1989) ........................................................................................ 13, 14

*Guan v. City of New York*,
    37 F.4th 797 (2d Cir. 2022) ........................................................................... 11, 12

*Hamilton v. City of New York*,
    24 Civ. 2550 (CM), 2025 U.S. Dist. LEXIS 21889
    (S.D.N.Y. Feb. 6, 2025) ........................................................................................ 6

*Hardy v. New York City Health & Hosp. Corp.*,
    164 F.3d 789 (2d Cir. 1999) ................................................................................ 6, 7

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ......................................................................................... 12, 14

*Hartline v. Gallo*,
    546 F.3d 95 (2d Cir. 2008) .................................................................................. 17

*Herrmann v. Moore*,
    576 F.2d 453 (2d Cir. 1978) ............................................................................... 17

*Higginbotham v. City of New York*,
    105 F. Supp. 3d 369, 2015 U.S. Dist. LEXIS 62227,
    2015 WL 2212242 (S.D.N.Y. May 12, 2015) ..................................................... 13

*Hogan v. Fischer*,
    738 F.3d 509 (2d Cir. 2013) ................................................................................ 4, 5

*Interstate Flagging, Inc. v. Town of Darien*,
    283 F. Supp. 2d 641 (D. Conn. 2003) ............................................................ 19-20

*Johnson v. County of Nassau*,
    2010 U.S. Dist. LEXIS 101752
    (E.D.N.Y. Sept. 27, 2010) ................................................................................... 13

*Jones v. R.R. Donnelley & Sons Co.*,
    541 U.S. 369 (2004) ............................................................................................. 4

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007) ................................................................................. 3

*Kerman v. City of New York*,
    261 F.3d 229 (2d Cir. 2001) ............................................................................... 12

**Cases**                                                                                                                                   **Pages**

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)............................................................................................3

*Lauture v. Int'l Bus. Machs. Corp.*,
    216 F.3d 258 (2d Cir. 2000)..........................................................................................14

*Mirro v. City of New York*,
    74 N.Y.S.3d 356 (App. Div. 2018) ................................................................................6

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978)........................................................................................................8

*Moran v. County of Suffolk*,
    No. 11 Civ. 3704 (PKC) (GRB), 2015 WL 1321685
    (E.D.N.Y. Mar. 24, 2015) ..............................................................................................5

*Nkansah v. United States*,
    No. 18-cv-10230 (PAC) (SLC), 2021 U.S. Dist. LEXIS 227070
    (S.D.N.Y. Nov. 23, 2021) ..............................................................................................5

*Ormiston v. Nelson*,
    117 F.3d 69 (2d Cir. 1997).............................................................................................4

*Pappas v. Passias*,
    887 F. Supp. 465 (E.D.N.Y. 1995) ..............................................................................19

*Pearl v. City of Long Beach*,
    296 F.3d 76 (2d Cir. 2002).............................................................................................4

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986)...................................................................................................9, 10

*Pierson v. City of New York*,
    56 N.Y.2d 950 (1982) ...........................................................................................6, 7, 8

*Rini v. Zwirn*,
    886 F. Supp. 270 (E.D.N.Y. 1995) .........................................................................17, 20

*Rolon v. Henneman*,
    517 F.3d 140 (2d Cir. 2008)...........................................................................................3

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988)...........................................................................................20

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)......................................................................................................18

**Cases**                                                      **Pages**

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)..................................................................18

*Thomas v. Roach*,
    165 F.3d 137 (2d Cir. 1999)..................................................................16

*Tracy v. Freshwater*,
    623 F.3d 90 (2d Cir. 2010)....................................................................14

*Tufano v. One Toms Point Lane Corp.*,
    64 F. Supp. 2d 119 (E.D.N.Y. 1999) ....................................................17

*Wallace v. Kato*,
    549 U.S. 384 (2007)................................................................................4

*Williams v. New York City Dep't of Educ.*,
    2019 U.S. Dist. LEXIS 147789
    (S.D.N.Y. Aug. 28, 2019) .....................................................................17

**Statutes**

18 U.S.C. § 1961, *et seq*..................................................................18, 19

18 U.S.C. § 1961(1) .........................................................................18, 19

18 U.S.C. § 1961(5) ...............................................................................18

18 U.S.C. § 1962 .............................................................................18, 19

18 U.S.C. § 1963 ...................................................................................18

18 U.S.C. § 1964 ...................................................................................18

18 U.S.C. § 1964(c) ...............................................................................19

18 U.S.C. § 1965 ...................................................................................18

18 U.S.C. § 1966 ...................................................................................18

18 U.S.C. § 1967 ...................................................................................18

18 U.S.C. § 1968 ...................................................................................18

42 U.S.C. § 1981 .........................................................................4, 14, 15

42 U.S.C. § 1981(a) ...............................................................................14

**Statutes**                                                                 **Pages**

42 U.S.C. § 1983 ...................................................................................4, 5, 8, 10, 16

42 U.S.C. § 1985 .........................................................................................4, 5, 16, 17

42 U.S.C. § 1985(3) ...............................................................................................16

42 U.S.C. § 2000d ..................................................................................................18

42 U.S.C. §§ 2000e, *et seq.* .................................................................................18

C.P.L.R. § 214(5) .....................................................................................................4

Fed. R. Civ. P. 8 ............................................................................................2, 17, 20, 21

Fed. R. Civ. P. 8(a) ................................................................................................18

Fed. R. Civ. P. 8(a)(2) ............................................................................................20

Fed. R. Civ. P. 12(b)(6) .......................................................................................3, 18

Fed. R. Civ. P. 15(c) ............................................................................................4, 5

Fed. R. Civ. P. 15(c)(1)(C)(ii) .................................................................................4

N.Y. Gen. Mun. Law § 50-e ...............................................................................6, 7

N.Y. Gen. Mun. Law § 50-i ................................................................................6, 7

N.Y. Mental Hygiene Law § 9.41 .....................................................................10, 11

**Other Authorities**

5 C. Wright & A. Miller,
   *Federal Practice and Procedure* § 1281 (1969) ...............................................20

62 N.Y. Jur. 2d § 271 (1987) ..................................................................................6

## PRELIMINARY STATEMENT

Plaintiff Ali Moore has filed a 95-page Second Amended Complaint ("SAC") against a dizzying array of defendants—including the City of New York, individual New York City Police Department ("NYPD") officers, two former Presidents of the United States, both major political parties, the Federal Bureau of Investigation ("FBI"), the Central Intelligence Agency ("CIA"), the United States Armed Forces, the Nation of Islam, Louis Farrakhan, Columbia University, numerous hospitals and housing entities, and his mother. The SAC contains no coherent narrative but instead offers a disjointed collection of vague allegations, historical digressions, political commentary, and conspiracy theories.

Construed generously, Plaintiff's case appears to arise from a single incident on February 11, 2020, when he was temporarily detained by Morningside Housing Corporation Peace Officers and NYPD officers, and transported to Mount Sinai St. Luke's Hospital for a mental health evaluation following a call from his mother, codefendant Karen Eubanks. From this scarce set of factual allegations describing an unremarkable law enforcement interaction, Plaintiff has constructed an elaborate theory of racial persecution implicating virtually every major institution in American society.

The City Defendants now move to dismiss all claims against them on multiple independent grounds. First, Plaintiff's claims against the individual officers are time-barred, as they were not named until June 6, 2024—more than four years after the incident and well beyond the applicable three-year statute of limitations. Second, Plaintiff's state law claims are procedurally barred by his failure to file a notice of claim as required by New York General Municipal Law. Third, Plaintiff fails to state a viable municipal liability claim against the City, as he identifies no municipal policy or custom that caused his alleged constitutional injuries. Fourth, Plaintiff's substantive constitutional claims fail as a matter of law because the officers

had probable cause to detain him for a mental health evaluation based on the information available to them at the time. Fifth, Plaintiff fails to plead the essential elements of his various claims under the Civil Rights Acts of 1866, 1871, and 1964, relying instead on conclusory assertions and unsupported legal conclusions. Finally, the SAC violates Rule 8's requirement of a "short and plain statement," presenting instead a virtually incomprehensible narrative that fails to give Defendants fair notice of the claims against them.

For these reasons, and as more fully set forth below, the SAC should be dismissed in its entirety as to all City Defendants.

## STATEMENT OF FACTS

On February 11, 2020, Plaintiff was in his apartment at 70 LaSalle Street, New York, when his mother, Ms. Eubanks, contacted the New York City Police Department ("NYPD"). (ECF Dkt. No. 57, SAC at pp. 26, 30). Morningside Heights Housing Corporation Peace Officer Montovo facilitated the NYPD's entry into the building without Plaintiff's consent. *Id.* at pp. 26, 30.

While NYPD officers were outside his apartment door, Plaintiff contacted 311 and was transferred to the Civilian Complaint Review Board ("CCRB"). *Id.* at pp. 31. Officers "bangg[ed] on the door" and "came to the back of [his] room." *Id.* at p. 32. When Plaintiff opened his door, NYPD officers immediately arrested him "based off of Karen [Eubanks']" statements. *Id.* at pp. 31-32. Plaintiff was placed in "handcuffs that appeared unconventional." *Id.* at p. 27. Plaintiff was then escorted by police officers to an ambulance where he was subsequently transported to Mount Sinai St Luke's hospital. *Id.* at pp. 26-27, 31.

At the hospital, Plaintiff claims he was subjected to psychological evaluations against his will, that a social worker communicated with his mother without authorization, and

that his "discharge papers said nothing was wrong with [him]." *Id.* at p. 32. Plaintiff believes his medical records were subsequently altered. *Id*.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While at the motion to dismiss stage the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), this "tenet is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and must tender more than mere "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

While courts must construe *pro se* pleadings liberally and interpret them as raising the strongest arguments they suggest, even *pro se* plaintiffs must establish that the complaint states a plausible claim for relief. *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (courts

are "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions[.]") (internal quotation marks omitted).

## ARGUMENT

### POINT I

### MANY OF THE CLAIMS IN PLAINTIFF'S SECOND AMENDED COMPLAINT ARE TIME-BARRED

**A.  The § 1983 and § 1985 Claims Against Individual Defendants Are Time-Barred Because the Defendants Added to the Second Amended Complaint Do Not Relate Back to the Original Complaint**

Under New York's three-year statute of limitations for personal injury actions, claims under 42 U.S.C. § 1983 or § 1985 must be brought within three years of the date the alleged constitutional injury accrued.[1] *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997); *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994), N.Y. C.P.L.R. § 214(5). In false arrest or similar Fourth Amendment claims, accrual typically occurs at the time of the arrest or detention. *See Wallace v. Kato*, 549 U.S. 384, 388–89 (2007).

While a plaintiff may initially file against "John Doe" defendants, the Second Circuit has held that "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). Such substitutions are only permitted if they "relate back" under Rule 15(c), which requires that the new party "should have known that, but for a mistake concerning the proper party's identity, the original action would have been brought against him." Fed. R. Civ. P. 15(c)(1)(C)(ii). The Second Circuit has explicitly held that

---

[1] Additionally, claims under § 1981 are subject to a four-year statute of limitations for claims arising under the 1991 amendments to § 1981, and New York's three-year statute of limitations for all other § 1981 claims. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004); *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018).

"lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity,'" and thus cannot salvage otherwise untimely claims. *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466 (2d Cir. 1995); *see also Nkansah v. United States*, No. 18-cv-10230 (PAC) (SLC), 2021 U.S. Dist. LEXIS 227070, at *6-7 (S.D.N.Y. Nov. 23, 2021) (reaffirming that *Barrow*'s holding "remains the law of this Circuit" and that amendment to replace John Doe defendant is "not to correct a mistake but to correct a lack of knowledge").

Here, Plaintiff's claims arise from events on February 11, 2020. *See* SAC, pp. 26–28. Plaintiff commenced this action on February 10, 2023—one day before the expiration of the three-year limitations period. (*See* ECF No. 2.) At that time, however, he named only the City of New York and various "John Doe" police officers. The initial pleading did not identify Officer Tavares, Officer Rios, Sergeant Angelone, Detective Neville, nor Detective Imperato (collectively, the "newly named Defendants") until June 6, 2024, when he filed his Second Amended Complaint. (*See* ECF No. 57.) By then, the three-year limitations period had already expired on February 11, 2023.

Since Plaintiff's lack of knowledge of the officers' names is not a "mistake" permitting relation back under Rule 15(c), the claims against the newly named Defendants are time-barred. *See Hogan*, 738 F.3d, at 518; *Barrow*, 66 F.3d, at 469–70; *Moran v. County of Suffolk*, No. 11 Civ. 3704 (PKC) (GRB), 2015 WL 1321685, at *4 (E.D.N.Y. Mar. 24, 2015). Any § 1983 or § 1985 claims against the newly named Defendants must therefore be dismissed as time-barred.

**B.      All State Law Claims Are Procedurally Barred[2]**

Plaintiff asserts various state law claims, including intentional infliction of emotional distress (Count VIII), *respondeat superior* liability (Count IX), negligent hiring claims (Count X), and violations of the New York State Constitution (Count VI). Each of these claims is procedurally barred and must be dismissed as a threshold matter.

New York General Municipal Law establishes mandatory procedural prerequisites for maintaining tort actions against municipalities and their employees. Pursuant to N.Y. Gen. Mun. Law §§ 50-e and 50-i, a plaintiff must: (1) file a notice of claim within 90 days after the claim arises, and (2) commence the action within one year and 90 days after the incident giving rise to the claim. *See Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999); *Pierson v. City of New York*, 56 N.Y.2d 950, 954 (1982). These requirements apply with equal force to state constitutional tort claims. *See Dean v. Town of Hempstead*, No. 14-CV-4951 (MKB), 2024 U.S. Dist. LEXIS 146822, at *94 n.43 (E.D.N.Y. Aug. 16, 2024) (citing *Mirro v. City of New York*, 74 N.Y.S.3d 356, 359 (App. Div. 2018) ("[A] plaintiff's failure to serve a notice of claim requires dismissal of the cause of action alleging violations of the State Constitution.")).

A plaintiff asserting state law claims against a municipality must affirmatively "'plead in his complaint that he has served a notice of claim.'" *Hamilton v. City of N.Y.*, 24 Civ. 2550 (CM), 2025 U.S. Dist. LEXIS 21889, at *6 (S.D.N.Y. Feb. 6, 2025) (quoting *Davidson v. Bronx Mun. Hosp.*, 64 N.Y.2d 59, 61-62 (1984)). This pleading requirement is not merely procedural but jurisdictional in nature. *See Id.* (citing 62 N.Y.Jur.2d § 271 (1987)).

---

[2] Given these dispositive procedural barriers, and for the sake of brevity, Defendants do not address the substantive deficiencies in Plaintiff's state law claims. Should the Court determine that any state law claim survives these procedural hurdles, Defendants respectfully request leave to submit supplemental briefing addressing the substantive failings of these claims.

Plaintiff's SAC is devoid of any allegation that Plaintiff ever filed a notice of claim with respect to his state law claims.[3] This pleading deficiency alone warrants dismissal of all state law claims against the City Defendants.

Additionally, any state law claims against the City and its employees are time-barred. Pursuant to N.Y. Gen. Mun. Law §§ 50-e and 50-i, claims against municipalities and their employees require both: (1) filing a notice of claim within 90 days after the claim arises, and (2) commencing the action within one year and 90 days after the incident. See *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999); *Pierson v. City of New York*, 56 N.Y.2d 950, 954 (1982).

Even assuming *arguendo* that the notice of claim requirement were satisfied, the suit was commenced well beyond the applicable statute of limitations with respect to any state law tort claims. The incident Plaintiff complains of occurred on February 11, 2020. Pursuant to General Municipal Law § 50-i, the statutory deadline for commencing any state-law tort action was initially May 12, 2021 (one year and 90 days after the incident). Even adjusting this deadline to account for the COVID-19 tolling period established by Governor Cuomo through a series of Executive Orders, Plaintiff's deadline to bring any state law claims was December 26, 2021.[4] Plaintiff did not commence this action until February 10, 2023 (*See* ECF No. 1), approximately 411 days after the tolled deadline expired. Therefore, even with the benefit of the COVID-19 tolling period, Plaintiff's state law claims remain time-barred. *See Brash v. Richards*, 37 N.Y.3d 1 (2021) (confirming the applicability of the COVID-19 tolling to statutory limitations periods);

---

[3] State law claims asserted by Plaintiff in his SAC include violations of the New York State Constitution; negligence; intentional infliction of emotional distress; and negligent hiring, retention, or training under state law.

[4] Executive Order 202.8 (March 20, 2020) implemented the initial tolling of statutory limitations periods, with subsequent Executive Orders (202.14, 202.28, 202.38, 202.48, 202.55, 202.60, and 202.67) extending this tolling through November 3, 2020. Per Executive Order 202.72, the tolling provision was discontinued effective November 4, 2020. Accordingly, the statute of limitations was tolled for 228 days.

*see also Pierson*, 56 N.Y.2d at 954 (one year and 90 day period may not be extended beyond statutory provisions).

## POINT II

### PLAINTIFF FAILS TO STATE A CLAIM UNDER FEDERAL CIVIL RIGHTS STATUTES

**A.    The Second Amended Complaint Fails to State a Claim for Municipal Liability Under Monell[5]**

Plaintiff's claims against the City must be dismissed because the SAC does not plausibly allege that any purported constitutional injury resulted from a municipal policy, custom, or practice. To state a claim against a municipality under § 1983, a plaintiff must demonstrate that the alleged constitutional violation was caused by "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Such a policy or custom may be established by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

---

[5] To the extent Plaintiff attempts to assert liability against the City on a *respondeat superior* theory, such a claim is legally foreclosed. *See* SAC at p. 68, Count IX. It is firmly established that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). *See also, e.g.*, *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior."); *Coon v. Town of Springfield*, 404 F.3d 683, 686-87 (2d Cir. 2005). Rather, municipal liability under § 1983 must be predicated on an official policy or custom, as discussed herein.

*Buckner v. N.Y. Admin. for Childs. Servs.*, No. 24-CV-2539 (LTS), 2024 U.S. Dist. LEXIS 140152, at *6 n.5 (S.D.N.Y. July 31, 2024) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

But even pleading one of the four above violations is not enough. The plaintiff must also plead facts that would show a "direct causal link between municipal policy or custom and the alleged deprivations." *City of Canton v. Harris*, 489 U.S. at 385. Thus, the plaintiff must plausibly allege that, through deliberate conduct, the City was the "moving force" behind the constitutional violation. *Id.* at 389 (internal quotation marks omitted); *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011).

The SAC fails to satisfy any of these requirements. Plaintiff refers broadly to an alleged pattern of involuntary hospitalizations. *See SAC*, pp. 26–29 (describing the alleged February 11, 2020 hospital admission and comparing it to past "false arrest" incidents); *id.* at pp. 33–34, 38 (referencing 2015 or 2018 incidents). But he does not identify a formal City policy endorsing unlawful detentions, nor does he cite any specific training deficiency or widespread practice so pervasive as to constitute a custom. Rather, Plaintiff focuses on an isolated sequence of events—primarily his February 11, 2020 encounter with the NYPD, and two other hospital admissions—without providing factual allegations that these incidents reflect a City-wide pattern or policy. *See SAC*, pp. 30–37 (recounting Plaintiff's specific experience on February 11, 2020, but failing to allege any identical or similar incidents beyond his own). These disconnected anecdotes cannot plausibly show a City policy or practice under *Monell* and therefore fail to satisfy the threshold pleading requirement.

Nor has Plaintiff identified any final policymaker who directed the alleged constitutional violations. Under *Pembaur v. City of Cincinnati*, a municipality may only be held

liable if "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy." 475 U.S. 469, 483 (1986). The SAC, however, does not allege that a high-ranking City official—one with final policymaking authority—ordered or even sanctioned the challenged conduct. Instead, the named police officers and non-City entities (e.g., housing security personnel) are alleged to have acted on their own initiative, not at the behest of a municipal official with final decision-making authority. *Cf. Iqbal v. Ashcroft*, 556 U.S. 662, 676 (2009) (explaining that vicarious liability is inapplicable under § 1983 absent a showing of personal involvement or policymaking authority).

Furthermore, Plaintiff's allegations regarding any previous encounters with law enforcement fail to establish a practice "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). According to the SAC, Plaintiff claims that he was involuntarily admitted to hospitals or "falsely arrested" in 2015, 2018, and again in 2020. Even taken at face value, three alleged incidents over a five-year span—none of which are shown to involve the same officers, the same exact conduct, or a documented City policy—cannot plausibly demonstrate a City custom or usage tantamount to an official policy.

Because the SAC fails to articulate how the City acted as the "moving force" behind the alleged constitutional violations, all claims against the City must be dismissed.

**B.    The Second Amended Complaint Fails to State a Valid Claim for Unlawful Detention.**

**(1) Officers Had Probable Cause to Detain Plaintiff for a Mental Health Evaluation Based on Information Known at the Time.**

Plaintiff's Fourth Amendment claim arising from his temporary detention for a mental health evaluation on February 11, 2020 must be dismissed because the officers had probable cause to detain him. New York Mental Hygiene Law § 9.41 expressly authorizes police officers to "take into custody any person who appears to be mentally ill and is conducting

himself or herself in a manner which is likely to result in serious harm to the person or others."
N.Y. Mental Hyg. Law § 9.41. For a mental health detention, police officers have probable
cause when they possess "reasonable grounds to believe that the person may be a danger to
[himself] or others." *Guan v. City of New York*, 37 F.4th 797, 805 (2d Cir. 2022) (quoting
*Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003)). It is well-established that
"probable cause can exist even where it is based upon mistaken information, so long as the
arresting officer acted reasonably and in good faith in relying on that information." *Bernard v.
United States*, 25 F.3d 98, 103 (2d Cir. 1994) (citing *Colon v. City of New York*, 60 N.Y.2d 78
(1983)).

Plaintiff admits that on February 11, 2020, his mother Karen Eubanks contacted
the NYPD, which led to officers responding to his apartment. *See* SAC at p. 25. The Second
Amended Complaint does not specify the substance of Ms. Eubanks's call, but relates that she
"fabricated a false narrative and falsely alerted the police." *See* SAC at p. 90. Far from alleging
involvement of NYPD officers, Plaintiff's complaint asserts that Ms. Eubanks and Peace Officer
Gilmore "orchestrated . . . [Plaintiff's] unjust incarceration." (SAC at p. 88) However, Plaintiff
offers no facts suggesting that the responding officers had any reason to doubt the legitimacy of
information forwarded to them by Ms. Eubanks. The fact that Plaintiff was transported to Mount
Sinai St. Luke's Hospital for evaluation (*see* SAC at pp. 27-28) strongly suggests that Ms.
Eubanks communicated concerns about Plaintiff's mental well-being.

Plaintiff's allegation that he was "not a threat to [him]self or anyone else" (SAC
at p. 45) does not negate probable cause. An individual's own assessment of his own mental state
is not determinative. *See Barkai v. Mendez*, No. 21 Civ. 4050, 2024 U.S. Dist. LEXIS 35845, at
*50 (S.D.N.Y. Feb. 21, 2024) (officers not required to accept plaintiff's assurances of wellbeing

when responding to mental health crisis). The Fourth Amendment requires only that the officers acted reasonably based on the information available to them at the time of the detention.

Because the officers had probable cause for Plaintiff's detention under the circumstances known to them at the time, Plaintiff's Fourth Amendment claim must be dismissed.

**(2) Individual Officers Are Entitled to Qualified Immunity.**

Even if probable cause did not exist, the individual officers would be entitled to qualified immunity. Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the specific context of mental health detentions, the Second Circuit's "qualified immunity jurisprudence denies immunity only where it is 'sufficiently clear that a reasonable official would understand that what he is doing violates [the law] . . . .'" *Kerman v. City of N.Y.*, 261 F.3d 229, 239 (2d Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1986)).

Here, given the circumstances that prompted their response—a call from Plaintiff's mother—it was objectively reasonable for the officers to believe they had legal justification to detain Plaintiff for a mental health evaluation. No clearly established law would have put the officers on notice that conducting a welfare check and temporary detention in response to a call from a family member would violate constitutional rights. Indeed, courts have consistently held that such actions are privileged when officers reasonably believe someone may be a danger to themselves. *See Guan*, 37 F.4th at 805.

**C.      The Second Amended Complaint Fails to State a Valid Excessive Force Claim.**

**(1) Plaintiff's Allegations of "Excessive Force" and "Unconventional Handcuffs" Are Conclusory and Legally Insufficient.**

The Fourth Amendment prohibits the use of excessive force during an arrest, and claims of excessive force are analyzed under an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). A plaintiff asserting an excessive force claim must allege that he sustained an injury as a result of the force used by the defendant.  *See Buie v. City of New York*, 2015 U.S. Dist. LEXIS 147642, at *8 (E.D.N.Y. Oct. 30, 2015);  *Johnson v. Cty. of Nassau*, 2010 U.S. Dist. LEXIS 101752, at *8-9 (E.D.N.Y. Sep. 27, 2010). A plaintiff must provide more than conclusory allegations of physical and emotional injuries; such allegations must be plausible and supported by specific facts. "Courts in this District have routinely dismissed excessive force claims where the plaintiff . . . did not allege any physical injuries." *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 2015 U.S. Dist. LEXIS 62227, 2015 WL 2212242, at *9 (S.D.N.Y. May 12, 2015)

The SAC contains only vague and conclusory allegations regarding the use of force during Plaintiff's detention on February 11, 2020. Plaintiff merely states that officers "used excused excessive force when banging [sic] on the door" and that they placed him in "handcuffs [that] didn't look like normal handcuffs they were like chain cuffs or handcuffs combined as 1." (SAC at pp. 26-27). Such conduct is routine in law enforcement and falls well below the threshold of force that could plausibly be deemed "excessive" under Fourth Amendment standards. Further, while Plaintiff uses variations of the word "injury" 18 times in his SAC, the cause or result of the supposed injury is never detailed.  These bare assertions, devoid of factual enhancement about the nature, degree, or circumstances of the alleged force,

are precisely the type of "naked assertions" that the Supreme Court has deemed insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. 544, 557 (2007).

### (2) Individual Officers Are Entitled to Qualified Immunity.

As discussed in Section II.B(2), *supra*, qualified immunity also shields the officers from liability on the excessive force claim. Qualified immunity protects officers from liability when their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In the excessive force context, the Second Circuit has recognized that "not every push or shove" constitutes excessive force. *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). No clearly established law would have put the officers on notice that the use of handcuffs during a mental health detention—even if they appeared "unconventional" to Plaintiff—was unconstitutional, particularly in the absence of any alleged injury.

### D.    Plaintiff's Claims Under the Civil Rights Act of 1866 (42 U.S.C. § 1981) Must Be Dismissed Because He Fails to Allege Any Impaired Contractual Relationship or Intentional Racial Discrimination.

42 U.S.C. § 1981 specifically prohibits racial discrimination in contractual relationships, including the making, performance, modification, and termination of contracts. 42 U.S.C. § 1981(a); *see also Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 333 (2020)*; Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-75 (2006).

The law unequivocally requires three critical elements for a viable § 1981 claim. A plaintiff must establish: "(1) that []he is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981." *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000). Most critically, a § 1981 claim requires an actual or attempted

contractual relationship that was impaired by racial discrimination. *Domino's Pizza*, 546 U.S. at 476 ("Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship[ or] impairs an existing contractual relationship[.]").

The SAC wholly fails to identify any contractual relationship whatsoever that was affected by Defendants' alleged conduct. While Plaintiff references his status as a "Black Freeman" or "African American" throughout, *see* SAC at pp. 55-57, he never connects this status to any contractual right that was impeded by racially discriminatory conduct.

Plaintiff's allegations of intentional discrimination are equally deficient. Rather than pleading specific instances of racially motivated conduct by any individual Defendant during the February 11, 2020 incident, the SAC merely offers conclusory assertions about systemic racism at pages 54-56 and 83-89. These generalized grievances cannot substitute for the particularized pleading of discriminatory intent mandated under § 1981. *See Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (en banc) (citing *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)) ("Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory[.]).

Plaintiff's reliance on historical comparisons and broad social critique cannot satisfy the Supreme Court's stringent requirement that § 1981 "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n*, 458 U.S. at 391. This standard demands specific factual allegations demonstrating that each Defendant's actions on February 11, 2020, were motivated by racial animus rather than legitimate law enforcement purposes. Plaintiff makes no such allegations. *See* SAC at pp. 42-47, 87-89.

In sum, Plaintiff's § 1981 claims must be dismissed because the SAC fails to identify any impaired contractual relationship, pleads only conclusory allegations of race-based

discrimination without factual support, and does not adequately allege purposeful discrimination

by any Defendant. These fundamental deficiencies render any claims under the Civil Rights Act

of 1866 legally insufficient.

**E.    Plaintiff's Claims Under the Conspiracy Provisions of the Civil Rights Act of 1871 (42 U.S.C. § 1985) Must Be Dismissed Because He Fails to Allege a Conspiracy Based on Discriminatory Animus or Any Meeting of the Minds.**

The Civil Rights Act of 1871 is codified in multiple sections of Title 42, most

prominently §§ 1983 and 1985. While § 1983 provides a cause of action for deprivations of

constitutional rights under color of state law, § 1985 specifically addresses conspiracies to

interfere with civil rights. To the extent Plaintiff invokes the conspiracy provisions of the Civil

Rights Act of 1871 under § 1985, these claims must be dismissed for multiple legal deficiencies.

To maintain a viable claim under § 1985(3), a plaintiff must allege: "1) a

conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of

persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

and 3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person

or property or deprived of any right or privilege of a citizen of the United States." *Britt v.

Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006) (internal quotation marks omitted). Critically, the

conspiracy must be motivated by "some racial[—]or perhaps otherwise class-based[—]invidious

discriminatory animus." *Id.* (internal quotation marks omitted) (quoting *Thomas v. Roach*, 165

F.3d 137, 146 (2d Cir. 1999)).

The SAC fundamentally fails to plead factual content that would allow the Court

to reasonably infer a conspiracy among the defendants. Plaintiff's allegations of a conspiracy are

purely conclusory and speculative. *See, e.g.,* SAC at p. 84 (stating without explanation that

discriminatory behavior "appears to be condoned by influential entities"); *Id.* at p. 75 ("Dr. King

and Malcolm X fought for corrective action (reparations) before falling victim to 42 U.S.C. 1983

and 42 U.S.C 1985 the FBI's role in Dr. King's tragic demise, a well-established fact."). Such vague assertions of concerted action, devoid of factual enhancement, are precisely the type of "formulaic recitation" of elements that the Supreme Court has deemed insufficient under FED. R. CIV. P. Rule 8. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Furthermore, the intracorporate conspiracy doctrine bars Plaintiff's § 1985 claims against the City defendants. This well-established doctrine provides that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Williams v. N.Y.C. Dep't of Educ.*, 2019 U.S. Dist. LEXIS 147789, at *44 (S.D.N.Y. Aug. 28, 2019) (quoting *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008)) "[T]he Second Circuit has imported the intracorporate conspiracy doctrine into Section 1985 jurisprudence, dismissing a claim of conspiracy against officers and employees of a non-profit institution." *Tufano v. One Toms Point Lane Corp.*, 64 F. Supp. 2d 119, 125 (E.D.N.Y. 1999) (citing *Herrmann v. Moore*, 576 F.2d 453 (2d Cir. 1978)). "'Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees.'" *Tufano,* 64 F. Supp. 2d, at 125. (quoting *Rini v. Zwirn*, 886 F. Supp. 270, 292 (E.D.N.Y. 1995)).

In sum, Plaintiff's § 1985 claims must be dismissed because the SAC fails to plausibly allege an agreement among defendants, lacks factual allegations of discriminatory animus, contains no factual basis for conspiracies under any subsection of § 1985, and is barred by the intracorporate conspiracy doctrine.

F.    **Plaintiff's Claims Under the Civil Rights Act of 1964 Must Be Dismissed Because He Fails to Allege Any Intentional Discrimination by or Employment Relationship with City Defendants.**

Plaintiff invokes the Civil Rights Act of 1964 without establishing the essential elements of a viable claim under this statute. Any attempts to assert liability under Titles VI or VII must be dismissed.

Title VI prohibits discrimination "on the ground of race, color, or national origin" in "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Supreme Court has established that a plaintiff must plead and prove intentional discrimination to recover damages under Title VI. *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001). Plaintiff's SAC lacks factual allegations plausibly suggesting that any Defendant intentionally discriminated against him because of his race during the February 11, 2020 incident.

Title VII specifically addresses employment discrimination. 42 U.S.C. §§ 2000e et seq. As Plaintiff does not allege any employment relationship with the City Defendants, nor any adverse employment action, any Title VII claim necessarily fails as a matter of law.

Accordingly, Plaintiff's claims under the Civil Rights Act of 1964 should be dismissed.

**G.      The Second Amended Complaint Fails to State a Civil RICO Claim.**

To the extent Plaintiff attempts to assert a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, it must be dismissed. "[T]o survive a Rule 12(b)(6) motion to dismiss, a plaintiff must offer 'more than labels and conclusions' in pleading the non-fraud elements of a RICO claim under Rule 8(a)." *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (citing *Twombly*, 550 U.S. at 555). A private plaintiff alleging a civil RICO violation must plausibly plead: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity," as well as injury to business or property "by reason of" the RICO violation. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). A "pattern of racketeering activity" requires the commission of at least two predicate acts within a ten-year period, involving crimes indictable under federal law, such as mail fraud, wire fraud, or extortion. *See* 18 U.S.C. § 1961(1), (5).

18

The private right of action under the RICO statute requires that the person bringing suit was "injured in his business or property by reason of a violation of [18 U.S.C. § 1962.]" 18 U.S.C. § 1964(c).  Thus, a RICO plaintiff must demonstrate not only that the alleged predicate acts occurred but also that they caused concrete financial or property loss. Emotional distress, reputational harm, or other personal injuries do not suffice. *See, e.g.*, *Pappas v. Passias*, 887 F. Supp. 465, 470 (E.D.N.Y. 1995) ("[E]motional distress is not cognizable under RICO because it does not constitute an injury to business or property.").

Here, the SAC makes only brief references to "RICO" or "organized racketeering," but it fails to identify any predicate acts prohibited by 18 U.S.C. § 1961(1). *See* SAC, pp. 7-8, 58-59 (mentioning "RICO" in connection with references to conspiracies and "organized" wrongdoing). Nor does Plaintiff allege a distinct "enterprise" encompassing the City or its agents, or any shared purpose and coordination that might suggest ongoing criminal conduct. Instead, Plaintiff relies on isolated incidents related to his arrest and hospital admission—allegations that do not come close to establishing a scheme of mail or wire fraud, extortion, or any other enumerated racketeering activity. Indeed, there is no suggestion that these alleged acts were intended to generate unlawful profit or harm Plaintiff's business or property. As such, he does not satisfy RICO's "pattern" or "enterprise" requirement, nor does he plead a cognizable injury to business or property sufficient to establish standing. *See D. Penguin Bros.* 587 F. App'x, at 667 (affirming dismissal of civil RICO claims where plaintiff failed to allege cognizable "predicate acts" or an enterprise distinct from the alleged wrongdoers).

Additionally, municipalities are incapable of forming the criminal intent necessary to support the predicate offense requirement of RICO, and such intent cannot be imputed by virtue of its employees' actions. *See Interstate Flagging, Inc. v. Town of Darien*, 283

F. Supp. 2d 641, 645–46 (D. Conn. 2003) (first citing *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 457 (S.D.N.Y. 1998) ("a municipality cannot form the requisite criminal intent to establish a predicate act"), then citing *Rini v. Zwirn*, 886 F. Supp. 270, 295 (E.D.N.Y. 1995) ("*mens rea* on the part of the agents of the municipality may not be imputed to the municipality through the doctrine of *respondeat superior*.")).

Accordingly, any attempt to invoke RICO must be dismissed for failure to plead the requisite elements, including the existence of an enterprise, a pattern of racketeering activity, and a resultant injury cognizable under RICO.

## POINT III

## <u>ADDITIONAL GROUNDS FOR DISMISSAL</u>

### A.    The Second Amended Complaint Fails to Comply with Rule 8's "Short and Plain Statement" Requirement

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The statement should be short because 'unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citing 5 C. Wright & A. Miller, Federal  Practice and Procedure § 1281, at 365 (1969)). "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Id.*

Plaintiff's Second Amended Complaint ("SAC") fails to meet this basic requirement. The SAC spans 95 pages and contains a bewildering array of allegations against numerous defendants—ranging from local officers to federal agencies, from private hospitals to

political parties, and even including former U.S. Presidents. *See* SAC at pp. 1-5 (naming dozens of defendants), pp. 11-23 (listing numerous parties and addresses). The complaint is replete with historical digressions, conspiracy theories, and political commentary that bear little relation to the central factual allegations concerning Plaintiff's brief detention on February 11, 2020. *See*, *e.g.*, SAC at pp. 72-77 (discussing slavery, reconstruction, and various presidential administrations).

Many of the allegations are repetitive, contradictory, or so vague that Defendants cannot reasonably be expected to formulate a response. For example, Plaintiff references "events" that supposedly occurred on "October 1-5, 2021" and "August 28, 2021" without explaining their relevance to the claims against these Defendants. *See* SAC at pp. 39, 28-29. Similarly, the SAC contains ten separate "counts" with overlapping legal theories and nearly identical factual allegations. *See* SAC at pp. 59-71.

Even construing the pleading liberally in light of Plaintiff's pro se status, the SAC fails to provide "a short and plain statement" that would allow each Defendant to understand the specific claims against them and the factual bases for those claims. The sheer volume and incoherence of the allegations impose an unfair burden on Defendants and the Court.

Accordingly, the SAC should be dismissed for failure to comply with Rule 8.

## CONCLUSION

For the reasons set forth herein, defendant City of New York respectfully requests that the Court grant its motion to dismiss all claims against the City, Joseph Angelone, Adam Imperato, William Neville, Michael Rios, and Freddy Tavares in the Amended Complaint, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated:       New York, NY
             March 7, 2025

                            MURIEL GOODE-TRUFANT
                            Corporation Counsel of the City of New York
                            *Attorney for Defendants City, Angelone,*
                            *  Imperato, Neville, Rios, and Tavares*
                            100 Church Street
                            New York, New York 10007
                            (212) 356-2670

                        By: */s/ Joseph Zangrilli*
                            Joseph Zangrilli & Jack McLaughlin
                            *Senior Counsel*
                            Special Federal Litigation

Cc:     **VIA FIRST CLASS MAIL**
        Ali Alexander Moore
        1630 E. Cold Spring Lane
        Baltimore, MD 21218
        *Plaintiff Pro Se*

        Karen Eubanks
        70 LaSalle Street
        New York, NY 10027
        *Codefendant Pro Se*