UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALI ALEXANDER MOORE,

                Plaintiff,

      – *against* –

CITY OF NEW YORK, et al.,

                Defendants.

**OPINION & ORDER**

23-cv-01300 (ER)

RAMOS, D.J.:

Ali Alexander Moore, proceeding *pro se*, filed the instant civil rights action against numerous Defendants, including but not limited to the City of New York ("the City"); the New York City Police Department ("NYPD"); NYPD officer Michael Rios; NYPD officer Freddy Tavares; NYPD Sergeant Joseph Angelone; NYPD Emergency Service Unit ("ESU") Detective William Nevile; NYPD ESU Detective Adam Imperato (collectively "the NYPD officers"); Morningside Heights Housing Corporation ("MHHC"); Moore's mother, Karen Eubanks; Mount Sinai Health System; Mount Sinai St. Luke's Hospital; Civil Complaint Review Board ("CCRB") Investigator Murgo; Columbia University; Barack Obama; and the Federal Bureau of Investigation ("FBI"). Doc. 57.

Before the Court is the motion to dismiss the second amended complaint ("SAC") pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) and Rule 8 jointly filed by the City and NYPD officers. Doc. 90. For the reasons set forth below, the motion is GRANTED, and the Court dismisses Moore's claims against other Defendants *sua sponte*.

I.    **BACKGROUND**

A. **Factual Background**

The SAC does not present a coherent narrative. [1] The allegations center on the arrest of Moore on February 11, 2020. Doc. 57.

On February 11, 2020, upon being contacted by Moore's mother, Karen Eubanks, the NYPD went to Moore's apartment at the Morningside Heights Housing, 70 LaSalle Street, New York. *Id*. at 30. They pounded on the apartment door. *Id*. at 31. After realizing the NYPD was outside of his apartment, Moore called 311. *Id*. at 30–31. Moore's call was transferred to the CCRB, who asked Moore to call back after the incident. [2] *Id*. at 31.

As soon as the NYPD entered Moore's apartment, [3] they handcuffed him, searched his pockets, and pulled out his phone. *Id*. Moore was then taken out to an ambulance. *Id*. Despite his resistance, Moore was transported and admitted to Mount Sinai St. Luke's Hospital. *Id*. at 32. Two psychologists at the hospital evaluated him without his consent. *Id*. One of them looked up his medical records from another Mount Sinai hospital. *Id*. A few hours later, Moore was discharged from the hospital and given a paper stating that "nothing was wrong with [him]." *Id*. He then went back to his apartment building and asked Montovo[4] to open the door to his apartment because he did not have the key with him. *Id*. at 30, 32. But Montovo coerced Moore into making "self-incriminating statements to cover for [Montovo's] action earlier that day." *Id*. at 33.

---

[1] The SAC lacks a coherent numbering system. Some paragraphs are numbered but some are not. Moore also restarts the sequence of numbering several times. Thus, the Court will cite to the page number instead of the paragraph.

[2] The SAC writes "[t]he [CCRB] investigator explained [in] simple terms to call back after every [sic] transpired." Doc. 57 at 31.

[3] It is unclear how the NYPD entered into Moore's apartment. In the beginning of the factual allegations section, Moore asserts that the NYPD came into his apartment "with help from" MHHC peace officer Montovo, who "opened the door," and that he did not "answer the door" or give approval for the police to come in. Doc. 57 at 30. Later, Moore alleges that "as soon as [Moore] opened the door, the NYPD arrested[] him." *Id*. at 31.

[4] Moore describes Montovo as an "MHHC peace officer" who "masquerades" as a security guard. Doc. 57 at 32.

On February 15, 2020, Moore reported to the CCRB that his Fourth and Fourteenth Amendment rights were violated by the NYPD on February 11, 2020 and sometime in July, 2018.[5]  *Id*. at 36.  He was interviewed by Investigator Murgo and her supervisor.  *Id*.  Moore mentioned "NYPD officer Reese, officer 718, and Sergeant Pierrer" in his complaint.  *Id*. at 29.  He also filled out three forms to authorize disclosure of his medical records, which he later withdrew.  *Id*.  Later, Moore submitted additional evidence to the CCRB to reopen his case.[6]  *Id*. at 38.  But the CCRB stopped the investigation and closed the case on June 20, 2020.  *Id*. at 39.  Moore suspects that the closure of his complaint was a "setup."  *Id*.  After certain undefined events occurred on October 1 and 5, 2021,[7] Moore made a complaint against Investigator Murgo to the CCRB approximately a year after those events in December 2022.[8]  *Id*. at 39.  This case was concluded by the end of the same month.[9]  *Id*.

In the months before February 11, 2020, NYPD officers went to Moore's apartment after Moore called the police to complain about his mother's alleged harassment.  *Id*. at 33.  One of the police officers held his camera close to Moore's phone when he was scrolling through pictures for evidence.  *Id*. at 34.  Moore concludes the officers were "testing the water to see how much they could get away with."  *Id*.  Around a week after the police responded, Moore received a call from an unknown number.  *Id*. He believes the call was a video chat request from the NYPD because his screen was blue

---

[5] Moore does not specify how his rights were violated in July 2018.  He only alleges that he was admitted to the New York City Presbyterian Hospital in July 2018 and the NYPD was involved in that incident.  *Id*. at 36–37.

[6] The SAC uses the term "reopen" but does not explicitly state whether and when the case was closed.

[7] Moore does not specify what happened on October 1 and 5 of 2021.  Doc. 57 at 39.

[8] Under the heading "December of 2022" in the complaint, Moore writes that "[a]fter events transpired on [October 1 and 5 of 2021], I went to the [CCRB] again and made a complaint against Ms. Murgo.  Apparently[,] they reopened the cases [sic] but concluded it by the month of December 2022."  Doc. 57 at 39.

[9] Moore also alleges that Sergeant Pierrer "violated the Civil Rights Act of 1871 and Civil Rights Act of 1964" on June 13, 2021 "as a form of retaliation" against his CCRB complaint.  Doc. 53 at 39.  But he does not specify what Sergeant Pierrer did.

and showed "unknown number." *Id*. at 35. On an unknown date, police officers also went outside Moore's apartment to "spy" on him. *Id*.

On February 15, 2020, Moore went to the 26th precinct to inquire about police officers who went to his apartment between December 2019 and January 2020.[10] *Id*. at 37. He asked for information about the police officers who went to his apartment "between December 2019 [and] January or earlier [on] February 1, 2020 to February 15, 2020 just to be safe." *Id*. The police officer on duty did not disclose relevant reports or names to Moore. *Id*. at 37.

### B. Procedural History

Moore filed the instant action on February 10, 2023, against the NYPD, "Saint Lukes Hospital/Mount Sinai Morningside," the New York City Fire Department ("FDNY"), the FDNY's Emergency Medical Services ("EMS"), Emergency Medical Technician, MHHC, and the CCRB. Doc. 2. He was granted leave to proceed *in forma pauperis*. Doc. 4. He filed an amended complaint ("FAC") on July 9, 2023, adding Investigator Murgo, Karen Eubanks, First Service Residential, and unnamed individuals "Does" working at the institutions that were named as defendants. Doc. 8. The Court issued an order on September 12, 2023, dismissing: (1) Moore's claims against the NYPD, the FDNY, and the EMS as non-suable entities; (2) the Section 1983 claims against MHHC, Mount Sinai, and Karen Eubanks because the complaint failed to allege that these private parties acted under color of state law; and (3) the Section 1983 claims against CCRB Investigator Murgo for failure to state a claim. Doc. 10. The order also directed the U.S. Marshals Service to effect service on the City and Karen Eubanks. *Id*. at 6. Moreover, the order instructed the New York City Law Department, MHHC, and Mount Sinai to identify the Does who participated in the February 11, 2020 incident. *Id*. at 6–7. The U.S. Marshals served the City and Eubanks. Docs. 28, 29. The City also

---

[10] Moore first alleges that he went to the 26th precinct on February 15, 2020 to "find out about Police Officers who came to the apartment between December 2019 [and] January 2020." Doc. 57 at 37.

4

subsequently provided the names of officers Freddy Tavares and Michael Rios, and Sergeant Joseph Angelone on April 1, 2024, Doc. 45, and the names of the NYPD ESU Detectives William Nevile and Adam Imperato on May 1, 2024, Doc. 47.  But MHHC and Mount Sinai have not provided the names of their employees as of the date of this Opinion.[11]

On June 6, 2024, Moore filed a second amended complaint ("SAC") against the City, the NYPD, the FDNY, the FDNY's EMS, the EMT, the CCRB, NYPD officers Freddy Tavares and Michael Rios, Sergeant Joseph Angelone, ESU Detectives William Nevile and Adam Imperato, First Service Residential, Mount Sinai St Luke's Hospital, Mount Sinai Health System, the Democratic Party, Columbia University, Barack Obama, MHHC, Karen Eubanks, NYPD Sergeant "Pierrer,"[12] Peace Officer Gilmore and Montovo, Investigator Murgo, 311 Service, Morningside Garden tenants, the Republican Party, "Trump," Joe Biden, Louis Farrakhan, Nation of Islam, the FBI, the U.S. Armed Forces, the Federal Strike Force, the Central Intelligence Agency, and the John Does related to these corporate and government entities.  Doc. 57.  The NYPD officers were served by the U.S. Marshals.  Docs. 72, 73, 76, 80, 81.

The SAC alleges the following claims:  negligence or gross negligence (Count 1); violations of the Racketeer Influenced and Corrupt Organization Act ("RICO") (Count 2); violations of the Section 1983 for Deprivation of Rights (Count 3); violations of the Section 1985 for Conspiracy to Interfere with Civil Rights[13] (Count 4); violations of the New York State Constitution (Count 5); violations of the False Claims Act (Count 6); intentional infliction of emotional distress (Count 7); *respondeat superior* against the City (Count 8); "negligent hiring" (Count 9); violations of the Health Insurance

---

[11] MHHC and Mount Sinai have not been served.

[12] The City was not able to identify a NYPD Sergeant Pierrer related to the Moore's action.

[13] Pursuant to Sections 1983 and 1985, Moore alleges violations of the Fourth, Eighth, and Fourteenth Amendments, "failure to intervene," and "municipal liability."  Doc. 57 at 59–66.

Portability and Accountability Act ("HIPAA") (Count 10); violations of the Civil Right

Act of 1871 (Count 11); violations of the Civil Rights Act of 1964 (Count 12); violations

of the Civil Rights Act of 1968 (Count 13); and violations of the Civil Rights Act of 1866

(Count 14).[14]  Doc. 57 at 57–92.

On March 7, 2025, the City and the NYPD officers jointly filed a motion to

dismiss the SAC.  Doc. 90.  On April 4, 2025, Moore first filed a 22-page response to the

motion to dismiss.  Doc. 93.  Later, on the same day, he filed another 42-page response to

the motion.  Doc. 94.  The next day, he filed a motion for correction of errors, alleging

that one of the responses filed on April 4 is a working draft and contains typos, and

attached the two responses.  Doc. 92.  But he did not indicate which was the corrected

document.  *Id*.  The reply memorandum of the City responds and cites to both responses

filed on April 4.  Doc. 95.  Upon reviewing the two responses filed on April 4, the Court

finds that the two documents contain substantively the same arguments.  For clarity, the

Court cites Doc. 94 as the operative memorandum in opposition because it was filed later.

The City argues that Moore's claims against the City and the NYPD officers

should be dismissed because:  (1) claims against the NYPD officers pursuant to Sections

1983 and 1985 are time-barred; (2) the state law claims against the City and the NYPD

officers are procedurally barred by the New York General Municipal Law; (3) Moore fails

to state his federal claims; and (4) the SAC fails to comply with Rule 8's "short and plain

statement" requirement.  Doc. 91.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept

all factual allegations in the complaint as true and draw all reasonable inferences in the

plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court is not

---

[14] The SAC does not coherently number its causes of action.  The Court numbers the causes here for clarity.

required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The same standard applies to motions to dismiss in cases brought by *pro se* plaintiffs. *Davis v. Goodwill Industries of Greater New York & New Jersey, Inc.*, 2017 WL 1194686, at *5 (S.D.N.Y. 2017) (citing *Zapolski v. Federal Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011)). The Court remains obligated to construe a *pro se* complaint liberally, and to interpret a *pro se* plaintiff's claims as "rais[ing] the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. A *pro se* complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 557).

### B.  28 U.S.C. § 1915(e)(2)

A district court must dismiss *in forma pauperis* action *sua sponte* if it determines that the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  "An action is frivolous when either:  (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal citation and quotation marks omitted).

## III.    DISCUSSION

### A.  State Law Claims Against the City and NYPD Officers are Procedurally Barred

Some of Moore's claims arise from New York state law, including negligence (Count 1), violations of the New York State Constitution (Count 5), intentional infliction of emotional distress (Count 7), and negligent hiring (Count 9).  Insofar as these claims are brought against the City and the NYPD officers, they are dismissed for failure to meet New York General Municipal Law procedural requirements.

New York General Municipal Law Sections 50-e and 50-i require a plaintiff asserting a tort action against municipalities and their employees to:  (1) file a notice of claim within 90 days after the claim arose; and (2) commence the action within one year and 90 days after the incident giving rise to the claim.  N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1); *Etuk v. City of New York*, No. 24-cv-4957 (KPF), 2026 WL 366763, at *14 (S.D.N.Y. Feb. 10, 2026) (holding that the requirement applies to claims against both the City and its employees).  Sections 50-e and 50-i also apply to claims pursuant to the New York State Constitution.  *Dean v. Town of Hempstead*, No. 14-cv-4951 (MKB), 2024 WL 3849688, at *34–36 (E.D.N.Y. Aug. 16, 2024) (applying Section 50-e to constitutional torts claim brought pursuant to the New York Constitution); *423 South Salina Street, Inc. v. City of Syracuse*, 68 N.Y.2d 474, 480 (1986) (applying Section 50-i to claims based on the New York State Constitution).  Failure to meet the procedural

8

requirements warrants dismissal of the claims. *Etuk*, 2026 WL 366763, at *14 (S.D.N.Y. Feb. 10, 2026).

Here, Moore does not allege that he filed a notice of claim or commence the instant action within one year and ninety days after the February 11, 2020 incident. Doc. 57 at 30. Without citing to any legal authorities, Moore argues that: (1) exceptions to the procedural requirement arise when justice so requires; (2) Sections 50-e and 50-i do not categorically bar state constitutional claims if they arise from the same set of facts as the federal constitution claims; and (3) courts cannot dismiss a case on procedural grounds at this stage of the litigation. Doc. 94 at 8–10. But district courts in this circuit routinely hold that they lack the power to exempt plaintiffs from the Section 50-e and 50-i requirements and dismiss state law claims for failure to meet these requirements accordingly, although Section 50-e(7) permits certain state courts to grant the exemption. *See e.g.*, *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 710 (S.D.N.Y. 2011) (holding that the district court lacks jurisdiction under Section 50-e(7) to grant an extension of time to file a late notice of claim and dismissing the state law claims); *Gibson v. Commissioner of Mental Health*, No. 04-cv-4350 (SAS), 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (holding that "federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice"). In addition, and contrary to Moore's argument, courts commonly dismiss state law claims for failure to meet the procedural requirements even if they allow federal constitutional claims based on the same set of facts to proceed. *See e.g.*, *Gibson*, 2006 WL 1234971, at *5–7 (dismissing state law claims for failure to meet the notice of claim requirement but proceeding with the Section 1983 claim).

Moore also argues that pursuant to the New York Executive Order 202.8 and its successors, the statute of limitations for his state law claims was tolled because of COVID-19. But the executive orders only tolled the statute of limitations for 228 days.

*See* Executive Order Nos. 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72, 202.8; *Shin v. NBC Universal Media, LLC*, No. 23-cv-10996 (LJL), 2025 WL 438297, at *10 (S.D.N.Y. Feb. 7, 2025).  Since Moore filed his state law claims almost three years after the incident, they are untimely even considering the COVID-19 tolling period.  Doc. 94 at 10–11.  Accordingly, his state law claims against the City and the NYPD officers (Counts 1, 5, 7, and 9) are dismissed.

**B.  Section 1983 Claim against the City**

Moore alleges a Section 1983 claim against the City.  But he fails to plausibly plead this claim.  To state a claim against a municipality pursuant to Section1983, a plaintiff must demonstrate that the alleged constitutional violation was caused by an official policy or custom.  *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978).  Such policy or custom can be shown by

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Staboleski v. City of New York*, No. 19-cv-8834, 2021 WL 796616, at *4 (S.D.N.Y. Mar. 1, 2021).

Moore argues that he plausibly establishes the policy or custom requirement because he alleges that he was subject to similar mental health arrests three times during the past five years.  Doc. 94 at 17.  But three incidents limited to Moore are not sufficient to plausibly show a consistent and widespread practice.  *See e.g.*, *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (summary order) (four examples "falls far short of" establishing a consistent and widespread practice); *Liang v. City of New York*, No. 10-cv-3089 (ENV) (VVP), 2013 WL 5366394, at *16 (E.D.N.Y. Sept. 24, 2013)

10

(plaintiff's three interactions with specific detectives in a single police unit is not sufficient to establish the policy and custom requirement under *Monell*), *aff'd sub nom. Liang v. Zee*, 764 F. App'x 103 (2d Cir. 2019).

Moore also alleges failure to train but does not include any facts to support it. *Simms v. City of New York*, 480 F. App'x 627, 631 n. 4 (2d Cir. 2012) (holding that plaintiffs are required to provide more than a simple assertion of their theory of liability to establish failure to train at motion to dismiss stage); *Tieman v. City of Newburgh*, No. 13-cv-4178 (KMK), 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015) (same). Thus, he fails to plausibly show the existence of a policy or custom. Accordingly, the Section 1983 claim against the City (Count 3) is dismissed.

### C. Section 1983 Claims against the NYPD Officers

Moore alleges claims against the NYPD officers pursuant to Section 1983 for violations of his Fourth, Eighth, and Fourteenth Amendment rights. Specifically, he alleges that the police officers unlawfully arrested him, used excessive force during the arrest, deprived him of his liberty without due process, and violated his right to freely associate with his family.[15] Doc. 57 at 59–62. The City argues that Moore's Section 1983 claims against the NYPD officers are untimely. The Court agrees.

Federal courts in New York apply a three-year statute of limitations for Section 1983 claims. *Harrison v. Harlem Hospital*, 364 F. App'x 686, 688 (2d Cir. 2010). A claim generally accrues "when the plaintiff has a complete and present cause of action." *Gabelli v. S.E.C.,* 133 S.Ct. 1216 (2013) (internal quotation marks omitted); *see also Twersky v. Yeshiva University*, 579 F. App'x 7, 9 (2d Cir. 2014). Moore's claims accrued

---

[15] Moore does not make any allegations for violation of his Eighth Amendment rights, except that one of the causes of action is titled "42 U.S.C. § 1983// 42 U.S.C. § 1985 - Violations of Fourth, Fourteenth, and Eighth Amendment Rights." Moreover, the Eighth Amendment only applies to individuals in criminal custody and thus does not apply to Moore. *Muzumala v. City of New York*, No. 22-cv-8423 (LTS), 2023 WL 2216095, at *5 n.5 (S.D.N.Y. Feb. 21, 2023); *see also Muhammad v. Maduekwe*, No. 13-cv-6026 (CM), 2016 WL 829740, at *5 n.3 (S.D.N.Y. Feb. 29, 2016) (holding that the Eighth Amendment does not apply to mental health patients confined in a state facility).

11

on February 11, 2020 when the mental health arrest occurred.  Doc. 57 at 30.  Moore filed

the initial complaint on February 10, 2023, just one day before the statute of limitations

expired.  Doc. 2.  However, the initial complaint listed the "New York Police

Department" as the name of "Defendant 1" on the *pro se* complaint form, and wrote

"Police Officers" as Defendant 1's current job title.  *Id*. at 4.  The Court construes this

initial complaint as listing both the NYPD and NYPD officers as Defendants, and the

City agrees.[16]  *Id*.; Doc. 91 at 14.  Moore first added placeholder "NYPD John Does" as

defendants in the FAC filed on July 9, 2023.  Doc. 8.  He did not identify the name of

these NYPD John Does until June 6, 2024, when he filed the SAC.  Doc. 57.

The City argues that Moore's Section 1983 claims against the NYPD officers are

untimely because Moore replaced the NYPD John Does with the names of the NYPD

officers after the statute of limitations expired.  Doc. 91 at 13.  In the Second Circuit,

John Doe placeholders cannot be used to circumvent statute of limitations, because

replacing a John Doe with a named party in effect constitutes a change in the party sued.

*Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013).  But amended pleadings that meet

the requirements of Rule 15(c) of the Federal Rule of Civil Procedure are considered to

relate back to the date of the original complaint.  *Id*.

Here, Moore's claims against the NYPD officers cannot relate back to his original

complaint pursuant to Rule 15(c).  Rule 15(c)(1)(C) provides the federal standard for

relation back, requiring that

> (1) the claim must have arisen out of conduct set out in the original
> pleading; (2) the party to be brought in must have received such
> notice that it will not be prejudiced in maintaining its defense; (3)
> that party should have known that, but for a mistake of identity, the
> original action would have been brought against it; and (4) the
> second and third criteria are fulfilled within 120 days of the filing
> of the original complaint, and the original complaint was filed

---

[16] In its memorandum in support of its motion to dismiss, the City states that at the time of the initial complaint, "[Moore] named only the City of New York and various 'John Doe' police officers."  Doc. 91 at 14.

within the limitations period.

*Id*.  Regarding the third element, the Second Circuit has held that lack of knowledge of a John Doe defendant's name does not constitute a mistake of identity.  *Id*. at 518.  Thus, Moore's claim cannot relate back pursuant to Rule 15(c)(1)(C).

Meanwhile, Rule 15(c)(1)(A) permits an amended pleading to relate back when the underlying statute of limitations allows.  Fed. R. Civ. P. 15(c)(1)(A).  The underlying statute of limitations, Section 1024 of the New York Civil Practice Law and Rules, was interpreted to permit a plaintiff ignorant of the name or identity of a defendant to proceed against such defendant as an unknown party and later relate back the claim after the defendant is identified, if the plaintiff:  (1) exercised due diligence to identify the defendant by name prior to the running of the statute of limitations; and (2) described the John Doe defendant "in such form as will fairly apprise the party that he is the intended defendant."  *Hogan*, 738 F.3d at 518–19; *Pierre v. County of Nassau*, No. 17-cv-6629 (LDH) (RER), 2022 WL 2872651, at \*7 (E.D.N.Y. July 21, 2022).

The City argues that Moore did not exercise due diligence because he did not take any steps to identify the individual officers before the statute of limitations expired on February 11, 2023.  Doc. 95 at 8.  The Court concludes that Moore did not exercise due diligence as Rule 15(c)(1)(A) requires.

A plaintiff exercising due diligence takes "concrete and timely steps to ascertain an officer defendants' identity, for example by submitting multiple discovery demands, requests under state or federal Freedom of Information laws, or requests to the Attorney General's office."  *Barrett v. City of Newburgh*, 720 F. App'x 29, 33 (2d Cir. 2017) (summary order).  Although uncommon, filing a formal CCRB complaint is also considered a method to identify a police officer defendant's identity.  *Joseph v. Bute*, No. 16-cv-2004 (PK) (CLB), 2019 WL 181302, at \*5 (E.D.N.Y. Jan. 9, 2019) ("[p]laintiff sought to learn [d]efendants' identities by filing a formal CCRB complaint").  To

determine whether a plaintiff exercised due diligence to identify a defendant, courts look to whether the plaintiff wasted any time to take any action and whether the plaintiff followed up after failed attempts prior to the expiration of statute of limitations. *Barrett*, 720 F. App'x at 34 (holding that although it is possible to reach a different outcome, the district court's finding that the plaintiff did not exercise due diligence was not clearly erroneous, because despite making multiple requests through three avenues, the plaintiff waited two years to begin identifying the defendant); *Sherman v. Thomas-Brown*, No. 14-cv-6912 (NGG) (JO), 2018 WL 1247377, at *5 (E.D.N.Y. Mar. 9, 2018) (finding no due diligence when the plaintiff only filed one unsuccessful FOIA requests and waited three years without any other attempts to identify the defendant).

Here, Moore did not waste any time to take the initial step to identify the police officers. On February 15, four days after his arrest, he reported the incident to the CCRB. Doc. 57 at 36. However, after he learned that his case was closed by the CCRB on June 20, 2020, he made no further effort to identify the John Doe officers. *Id*. at 39. Moreover, he waited over two years[17] to take any subsequent actions on his case—making a complaint against Investigator Murgo, the CCRB investigator who was responsible for his initial complaint, because he suspected the closure of his case was a "setup."[18] *Id*. Moore does not specify why he had such suspicion. The Court thus concludes that he did not diligently follow up after that one, failed attempt four days after the incident and thus did not exercise due diligence to identify the police officers. *See*

---

[17] Under title "December of 2022," Moore writes that "[a]fter events transpired on [October 1 and 5 of 2021], I went to the [CCRB] again and made a complaint against Ms. Murgo. Apparently[,] they reopened the cases [sic] but concluded it by the month of December 2022." Doc. 57 at 39. The Court construes the complaint as alleging that Moore made the complaint against Murgo in December 2022. But even if Moore made the complaint sometime before December 2022, he still waited at least over a year to take any follow-up actions after the close of his initial complaint. Moreover, he does not specify what occurred on October 1 and 5 of 2021.

[18] Moore also alleges that he "went to precinct 26 on February 15, 2020 to find out about Police Officers who came to the apartment between December 2019 [and] January 2020." Doc. 57 at 37. He asked for the information of police officers who went to his apartment "between December 2019 [and] January or earlier [on] February 1, 2020 to February 15, 2020 just to be safe." *Id*. He does not allege that he went to the precinct to inquire about the identity of the officers who arrested him on February 11, 2020.

14

*e.g.*, *Bute*, 2019 WL 181302, at *5 (finding due diligence where "within one year of the alleged misconduct, [p]laintiff sought to learn [d]efendants' identities by filing a formal CCRB complaint," and "made several additional efforts to ascertain [d]efendants' identities"); *Sherman*, No. 14-cv-6912 (NGG) (JO), 2018 WL 1247377, at *5 (E.D.N.Y. Mar. 9, 2018) (finding no due diligence when the plaintiff only filed one unsuccessful FOIA request and waited three years without any other attempts to identify the defendant). Accordingly, Moore's Section 1983 claims against the NYPD officers (Count 3) are dismissed as untimely without prejudice. Moore is granted leave to amend the complaint to demonstrate whether and how he exercised due diligence to identify the NYPD officers.

### D. Claims against Agencies of the City of New York

The Court previously dismissed the FAC claims against the NYPD, the FDNY, and the FDNY's EMS because agencies of the City of New York are not entities that can be sued. Doc. 10 at 2. The Court again dismisses the claims against these agencies, and the CCRB.

### E. State Law Claims against the Remaining Defendants

Moore also alleges New York state law claims against the First Service Residential, Mount Sinai St Luke's Hospital, Mount Sinai Health System, the Democratic Party, EMT, Columbia University, Barack Obama, MHHC, Karen Eubanks, NYPD Sergeant "Pierrer," Peace Officer Gilmore and Montovo, the CCRB John Does, Investigator Murgo, Morningside Garden tenants, the Republican Party, "Trump," Joe Biden, Louis Farrakhan, Nation of Islam, the FBI, the U.S. Armed Forces, the Federal Strike Force, the Central Intelligence Agency and the John Does related to these corporate and government entities (collectively "the remaining defendants"). These state law claims include negligence, violations of Moore's rights to due process and to be free from unreasonable searches and seizures pursuant to the New York State Constitution, intentional infliction of emotional distress, and negligent hiring.

Only state actions can trigger the New York State Constitution. *SHAD Alliance v. Smith Haven Mall*, 66 N.Y.2d 496 (1985) ("if there be no State action, our inquiries must end"); *Campbell v. Barclays Bank PLC*, 24 Misc. 3d 1210(A) (Kings Cnty. Ct. 2009) ("New York State's constitutional protections apply only where there is State action"). Regarding the claim against CCRB Investigator Murgo, Moore does not allege any facts that pertain to her, except that she interviewed him in connection with his CCRB complaint, the complaint was not successful, and Moore made a CCRB complaint against her afterwards. Doc. 53 at 36, 39. Regarding the claim against NYPD Sergeant Pierrer, Moore only alleges that he "violated the Civil Rights Act of 1871 and Civil Rights Act of 1964" on June 13, 2021 "as a form of retaliation" against Moore's CCRB complaint in a conclusory fashion. *Id*. at 39. None of these allegations plausibly support a New York State Constitution claim. Regarding the remaining defendants except for Investigator Murgo and NYPD Sergeant Pierrer, Moore fails to allege that any state action was involved.

To plead a negligence claim, the plaintiff must show: (1) a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) proximate causation of the plaintiff's injuries; and (4) damages. *Silivanch v. Celebrity Cruises, Inc.*, 171 F. Supp. 2d 241, 252 (S.D.N.Y. 2001). Moore does not plausibly allege that any remaining defendant owned a duty to him.

To prevail on a claim for negligent hiring, in addition to the elements of standard negligence, a plaintiff must allege that: "(1) the tort-feasor and the defendant were in an employee-employer relationship[;] (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence[;] and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Soliman v. City of New York*, No. 15-cv-5310 (PKC) (RER), 2017 WL 1229730, at *12 (E.D.N.Y. Mar. 31, 2017); *see also Ehrens v. Lutheran Church*, 385

F.3d 232, 235 (2d Cir. 2004).  Moore fails to plausibly allege any of these elements as regard to the remaining defendants.

To state a claim of intentional infliction of emotional distress under the New York law, a plaintiff must show:  (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial likelihood of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress.  *Soliman*, 2017 WL 1229730, at *10.  Among other things, Moore fails to plausibly allege any facts to show that the remaining defendants intended to cause or disregarded a substantial likelihood of causing severe emotional distress to him.

In conclusion, Moore's state law claims against the remaining defendants (Count 1, 5, 7, and 9) are dismissed.

### F.  Section 1983 Claims against the Remaining Defendants

The Court previously dismissed the Section 1983 claims against Mount Sinai, MHHC, Eubanks, and Investigator Murgo in the first amended complaint because Moore did not allege any facts suggesting that they acted under color of state or were involved in violating Moore's rights.  *Id*. at 4–5.  For similar reasons, Moore's Section 1983 claims against the remaining defendants (Count 3) are dismissed.

### G.  *Respondeat Superior*

Moore alleges that the City is liable for actions taken by the police, who are the City's employees, based on *respondeat superior*.  But a municipality cannot be held liable pursuant to Section 1983 based on *respondeat superior*.  *Alvarez v. City of New York*, No. 22-cv-8689 (PKC), 2024 WL 1140659, at *7 (S.D.N.Y. Mar. 15, 2024).  To the extent that this claim is brought under the common law against the City, it is procedurally barred by Sections 50-e and 50-i for failing to file a notice of claim and commence the instant action on time, as discussed above.  N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1); *Biswas*, 973 F. Supp. 2d at 539 (holding that unlike cases brought under section 1983, municipalities can be liable for the common law torts committed by its employees under

17

the doctrine of *respondeat superior*).  Thus, Moore's *respondeat superior* claim against the City (Count 8) is dismissed.  To the extent that Moore alleges this claim against any other Defendant, he fails to plead any facts to plausibly allege the claim.

### H.  Section 1985

To state a claim under Section 1985(3), deprivation of rights or privileges,[19] a plaintiff must show:  "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007).  Such conspiracy "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."  *Id*.  Moore fails to allege any facts to establish an inference of discrimination against him.  Accordingly, his Section 1985 claims (Count 4) are dismissed as to all Defendants.

### I.  The Civil Rights Act of 1871

Moore asserts a claim pursuant to the Civil Rights Act of 1871, which is now codified mostly in sections 1983, 1985, and 1986.  *Gollomp v. Spitzer*, 568 F.3d 355, 359 (2d Cir. 2009).  Moore made separate claims pursuant to Section 1983 and 1985.  Thus, the Court construes this Civil Rights of Act 1871 claim as a Section 1986 claim.  Section 1986 enables actions for neglect to prevent a Section 1985 violation.  42 U.S.C.A. § 1986.  A Section 1986 claim has to be predicated on a valid Section 1985 claim.  *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000).  Accordingly, the Court

---

[19] Moore does not specify which subsection of the Section 1985 he is relying on.  But Section 1985(1) and (2) target at conspiracies preventing officers from performing duties or obstructing justice.  42 U.S.C.A. § 1985.  Accordingly, they are not applicable to Moore's case.

dismisses Moore's Section 1871 claim (Count 11) against all Defendants because it finds no plausible Section 1985 claim.

### J. The Civil Rights Act of 1866, 1964, and 1968,

Moore asserts claims pursuant to the Civil Rights Acts of 1866, 1964, and 1968. Because Moore does not plausibly allege violations of his rights pursuant to any of these Acts, these claims (Count 12, 13, and 14) are dismissed as regard to all Defendants.

### K. RICO Claim

A private plaintiff alleging a civil RICO violation must plausibly plead: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity," as well as injury to business or property "by reason of" the RICO violation. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Spool v. World Child International Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). Among other things, Moore does not allege any injuries to his business or property. In the opposition memorandum, he argues that his ability to operate his business and maintain his property interests was harmed, which is insufficient because it is conclusory. *Schvimmer v. Randall*, No. 18-cv-7419 (PKC) (JRC), 2022 WL 4586086, at *23 (E.D.N.Y. Sept. 29, 2022), *aff'd sub nom. Schvimmer v. Hansell*, No. 22-2851, 2023 WL 7986444 (2d Cir. Nov. 17, 2023) (a personal injury, no matter physical or emotional, does not constitute damage to business or property pursuant to the RICO Act); *Westchester County Independence Party v. Astorino*, 137 F. Supp. 3d 586, 612 (S.D.N.Y. 2015) (same). Thus, Moore's RICO claim (Count 2) is dismissed as to all Defendants.

### L. False Claims Act Claim

Moore alleges that the Mount Sinai Health System and Mount Sinai St. Luke's hospital violated the False Claims Act. Specifically, he alleges that Mount Sinai exploited his medical insurance because his admission to the hospital was "unwarranted." To state a claim pursuant to the False Claims Act, a plaintiff must allege fraud on the U.S. government within the meaning of 31 U.S.C.A. § 3729. Moore fails to plausibly allege

19

that Mount Sinai conducted any fraud against the U.S. government. Thus, his claims pursuant to the False Claims Act (Count 6) are dismissed.

### M.  HIPAA

Moore alleges that physicians at Mount Sinai St. Luke's hospital "perused [his] medical records and referenced several prior occurrences while subjecting [him] to exploitation and coercive confinement within the admissions room." Doc. 57 at 71. But there is no private right of action under HIPAA. *Woodson v. Nassau County*, No. 24-cv-7580 (JMA) (LGD), 2025 WL 1456588, at *5 (E.D.N.Y. May 21, 2025). Enforcement of the HIPAA is exclusively delegated to the Secretary of the Department of Health and Human Services. *Meadows v. United Services, Inc.*, 963 F.3d 240, 244 (2d Cir. 2020). Accordingly, Moore's HIPAA claims (Count 10) are dismissed.

## IV.    CONCLUSION

For the forgoing reasons, the motion to dismiss is GRANTED. The claims against the NYPD, FDNY, FDNY's EMS, CCRB, and remaining defendants are dismissed by the Court *sua sponte*. Moore may file a third amended complaint by April 28, 2026. If he fails to do so, the case will be closed. The Clerk of Court is respectfully directed to terminate motions, Docs. 90, 92.

It is SO ORDERED.

Dated:    March 31, 2026
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.